UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office for D.C.<br>601 D Street, NW<br>Washington, DC 20530,<br><br>    Plaintiff,<br><br>  v.<br><br>1.063 MILLION ROUNDS OF 7.62X54MM<br>AMMUNITION;<br><br>24,000 ROUNDS OF 12.7MMX99MM<br>AMMUNITION;<br><br>6,960 PROXIMITY FUSES FOR ROCKET-<br>PROPELLED GRENADES;<br><br>  - and -<br><br>2,000 KG OF PROPELLANT FOR<br>ROCKET-PROPELLED GRENADES<br><br>    Defendants. | Civil Action No. 1:23-cv-880 |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff the United States of America (the "United States"), by and through the United States Attorney for the District of Columbia, alleges as follows and brings this verified complaint for forfeiture in a civil action *in rem* against the "Defendant Properties," which collectively consist of:

  i.   1.063 million rounds of 7.62x54mm ammunition ("Defendant Property 1");

  ii.   24,000 rounds of 12.7mmx99mm ammunition ("Defendant Property 2");

iii.    6,960 proximity fuses (a.k.a. "fuzes") for rocket-propelled grenades (or "RPGs") ("Defendant Property 3"); and

iv.    2,000 kg of propellant for rocket-propelled grenades ("Defendant Property 4").

## NATURE OF ACTION AND THE DEFENDANT IN REM

1.    This *in rem* forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") and the Defense Criminal Investigative Service ("DCIS"). Specifically, the United States is investigating an Iranian maritime weapons smuggling network involved in the illicit trafficking of lethal weapons and related munitions and supplies by sanctioned Iranian entities that directly supports military action by the Houthi movement in Yemen and the Iranian regime's campaign supporting terrorist activities in Yemen and throughout the region.

2.    The Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) as domestic and foreign assets of a designated foreign terrorist organization, the Islamic Revolutionary Guard Corps ("IRGC"), which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, and as domestic and foreign assets affording any person a source of influence over any such entity or organization.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.    Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), this court has jurisdiction for property subject to forfeiture on the high seas.

5.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(1)(A) and (b)(2).

**FACTS GIVING RISE TO FORFEITURE**

I.     **BACKGROUND**

   A.     **Iranian Support of Military Action and Terrorist Activity in Yemen**

   6.     According to open-source reporting, the Houthi, a rebel faction that has been fighting the United Nations ("U.N.")-recognized government in Yemen, took control of the Yemeni capital, Sana'a, in 2014. In response to Houthi advances, neighboring states launched a military campaign in 2015. Iran's regime is widely known to provide support to the Houthi. Yemeni officials and their allies, most notably the Kingdom of Saudi Arabia, have repeatedly and publicly alleged that Iran and its proxy, Hezbollah, have provided arms, training, and financial support to the Houthi. Iranian and Hezbollah officials have denied such claims.

   7.     In January 2020, 2021, 2022, and 2023 the U.N. Security Council published annual reports on Yemen (hereinafter referred to as "2020 Panel Report," "2021 Panel Report," "2022 Panel Report," and "2023 Panel Report," respectively) (collectively, "Panel Reports") regarding their findings on the ongoing conflict between the Houthi and the U.N.-recognized Yemeni government.

   8.     Regarding potential violations of the targeted U.N. arms embargo, the Panel Reports noted the continued reception by Houthi forces of military support in the form of assault rifles, rocket-propelled grenade launchers, anti-tank guided missiles, and more sophisticated cruise missile systems. Information conveyed through the Panel Reports has revealed a repeated practice of Iran providing military support, particularly in the form of conventional weapons and munitions, to the Houthi.

   9.     The 2021 Panel Report scoped the ongoing activity in Yemen for the timeframe of January 1, 2020, through December 5, 2020. As to potential violations of the targeted U.N. arms

embargo, the 2021 Panel Report noted two instances whereby lethal military aid, believed to be intended for Houthi forces, was intercepted during 2020 by way of maritime transit.

10.     These two interdictions were made against the dhows *Al-Shimasi* and *Bari-2* by the Saudi Royal Navy on or about April 17, 2020, and June 24, 2020, respectively. The interdiction of the *Al-Shimasi* resulted in a seizure which consisted of what was described in the 2021 Panel Report as 3,002 Kalashnikov-type model "56-1" assault rifles and 4,953 matching cartridge boxes, nine (9) "AM-50 Sayyad" anti-materiel rifles, 49 PK-type light machine guns, and over a dozen RU90G and RU120G thermal weapons sights. The interdiction of the *Bari-2* resulted in a seizure which included 1,298 Kalashnikov-type model 56-1 assault rifles, 200 RPG-7 launchers, 50 AM-50 Sayyad anti-materiel rifles, 5 RPG-29 launchers, 385 "PK"-pattern light machine guns, 60 heavy machine guns, and 21 9M133-type anti-tank guided missile launch containers.

11.     The 2021 Panel Report noted that a review conducted of the weapons seized from the *Al-Shimasi* and *Bari-2* assessed that many originated in Iran. For example, the seized 9M133-type anti-tank guided missile launch containers were found to contain materials, colors, and markings consistent with the Dehlavieh-version missile that is manufactured in Iran, as opposed to the original version manufactured in the Russian Federation. The panel further noted that the RU90G and RU120G thermal weapons sights were of Iranian origin and manufactured by the company Rayan Roshd Afzar, an Iran-based defense company. The 2021 Panel Report further concluded that the seized RPG-7 launchers bore markings and technical characteristics that were consistent with manufacturing in Iran and that the seized AM-50 Sayyad anti-materiel sniper rifles were also of Iranian origin.

12.     Regarding the *Bari-2*, the 2021 Panel Report noted that a review of a GPS receiver found on the vessel indicated that it was headed towards a rendezvous point off the Somali coast,

and further, that documents and coordinates from the GPS receiver indicated the vessel had previously sailed between ports in Somalia, Yemen and Iran. The panel additionally assessed that the *Bari-2* was likely acting at the time as a "feeder" vessel for smaller Yemeni dhows that carry the cargo from the Somali coast to Yemeni ports in and around Hadramawt and Mahrah.

13.    The following year, the 2022 Panel Report noted the continued reception by Houthi forces of lethal military aid. For example, on or about February 10, 2021, U.S. Navy Central Command ("NAVCENT")-directed "safety-of-the-seas" operations conducted by the USS *Winston Churchill* (also known as "DDG-81") resulted in the encounter and boarding of a dhow in international waters. This operation resulted in the interdiction of 3,752 Kalashnikov-type model 56-1 assault rifles; 198 "PKM"-pattern general-purpose machine guns; components for 82 "DShK" heavy machine guns; 50 AM-50 Sayyad anti-materiel rifles; and 90 rocket-propelled grenade launchers. The dhow was crewed by Yemeni nationals who stated that they had been instructed to pick up the cargo in the port of Jask in Iran in January 2021. The 2022 Panel Report further determined that the assault rifles and some of the general-purpose machine guns had technical characteristics and markings consistent with weapons manufactured in China, and the anti-material rifles (and associated sights) and the rocket-propelled grenade launchers were likely of Iranian origin.

14.    On or about December 20, 2021, a dhow, the *Al-Ghazal I*, crewed by Yemeni nationals was interdicted in international waters by the United States. According the to the 2023 Panel Report, the *Al-Ghazal I* left the port of Jask in Iran and was found to have laden on-board, assault rifles and ammunition whose markings were consistent with weapons manufactured in China. Interviews with the crew members further indicated their recruitment by senior leaders of a Yemen-Houthi smuggling network.

15.     These interdictions indicate that sea transport continues to play a vital role in potential violations of a targeted U.N. arms embargo. The Panel further noted in this annual reporting that the smuggling networks operating along these supply routes often utilize traditional cargo vessels, such as dhows, which often operate without proper registration papers and without transmitting an automatic identification signal. These vessels can unload their cargoes in small ports across the region or trans-ship cargo at sea, making them an ideal choice for arms smuggling.

**B.     The Islamic Revolutionary Guard Corps ("IRGC")**

16.     The U.S. Department of State and the U.S. Department of the Treasury have found that that Iranian government uses the IRGC, to include its clandestine operations branch known as the Qods Force ("IRGC-QF"), to be the Iranian Government's primary means to protect and defend Iran's hardline Islamic regime. The U.S. Departments of State and the Treasury have found that the IRGC and IRGC-QF direct and implement a global terrorist campaign against nations and regimes they deem to be adversarial and provide support and aid to those nations and regimes they deem allied with their goals and principles. The support of this global terrorist campaign includes the illicit trafficking of conventional weapons to proxies in various countries, including the Houthi in Yemen.

17.     On April 15, 2019, the United States Secretary of State designated the IRGC as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act. To date, the IRGC remains a designated Foreign Terrorist Organization.

18.     According to the U.S. Department of the Treasury, the IRGC and its major holdings have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion-dollar businesses and maintaining extensive economic interests in various industries, to include the oil and manufacturing sectors. The profits from these activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction and their means

of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad. *See* https://home.treasury.gov/news/press-releases/sm703. One such recent press release made by the U.S. Department of the Treasury on June 10, 2021, stated, in part:

> Since the onset of the conflict in Yemen, the Houthis have relied on support from the IRGC-QF to wage their campaign against the internationally recognized Yemeni government and the Saudi-led Coalition. Despite growing calls for peace, the Houthis have continued to escalate their lethal attacks inside Yemen and in the region, with dire consequences for Yemeni civilians and Yemen's neighbors.

https://home.treasury.gov/news/press-releases/jy0221.

19.     The IRGC and IRGC-QF act in foreign commerce with specific aims to threaten U.S. interests and the national security of the United States.  The following is just a brief list of many examples of how the IRGC and IRGC-QF engage in foreign commerce and activities outside the borders of Iran to harm the interests of the United States:

a.      In likely retaliation for the death of former IRGC-QF commander Qasem Soleimani, in 2021, a member of the IRGC used interstate commerce facilities in a failed plot to commit murder-for-hire and provide material support to a transnational murder plot targeting former National Security Advisor John Bolton, https://www.justice.gov/opa/pr/member-irans-islamic-revolutionary-guard-corps-irgc-charged-plot-murder-former-national.

b.      In January 2007, the IRGC-QF led by Abdul Reza Shahla'i planned an attack in Karbala, Iraq that killed five U.S. soldiers and wounded three others, https://rewardsforjustice.net/rewards/abdul-reza-shahlai/.

c.      In June 1996, the IRGC was responsible for planning the attack on the Khobar Towers in Dhahran, Saudi Arabia, during which 19 U.S. Air Force personnel were killed and more than 350 were injured, *Rimkus v. Islamic Republic of Iran*, 750 F. Supp.

2d 163, 174 (D.D.C. 2010).  IRGC senior officials recruited the attackers and worked in conjunction with them and Hezbollah, operating out of a terrorist base in the Bekaa or Beqaa Valley in Lebanon where the IRGC provided supplies and funds for the attack.  *Id.*

20.     Through these actions and many others, the IRGC and IRGC-QF's terrorism affects foreign commerce in a manner that harms the interests of the United States, both domestic and abroad.  Indeed, the entire purpose of the IRGC and IRGC-QF's campaigns of terror are to thwart the United States' diplomatic efforts, including its support for peace in the Middle East and recognition of Israel, by threatening the security of U.S. nationals and attempting to instill fear in the citizens of this country located within and outside its territorial boundaries.  *See In re Sealed Case*, 936 F.3d 582, 592 (D.C. Cir. 2019) (criminal defendant's use of drug trafficking to support terrorist organizations "magnifies the effect of his conduct on commerce between the countries where he was operating and the United States").  These terrorist activities undertaken in foreign commerce plainly have a domestic effect on the United States.

## II.    UNITED STATES MARITIME INTERDICTION OF A STATELESS VESSEL CONTAINING MUNITIONS FOR CONVENTIONAL WEAPONS ORIGINATING FROM IRAN AND DESTINED FOR YEMEN

21.     This civil forfeiture action arises from a recent NAVCENT interdiction of a stateless dhow (i.e., a dhow not displaying a national flag), the *Marwan 1*, occurring on or about December 1, 2022. According to U.S. Central Command ("CENTCOM"), the interception of the *Marwan 1* was initiated by the USS *Lewis B Puller* ("ESB-3"). In accordance with international law and routine maritime security operations taking place in the Gulf of Oman, a security team from the USS *Lewis B Puller* boarded the *Marwan 1*, which was manned by eleven Somali nationals, one Kenyan national, and one Pakistani national. Items discovered by the security team, which were laden on board the *Marwan 1*, consisted of a cargo of munitions made for conventional weapons.

22.    Information from CENTCOM indicates that in mid-November 2022, the *Marwan 1* was in waters off the coast of Iran and that the Iranian Navy[1] boarded the vessel and loaded it with ammunition and explosives, prior to placing oranges, apples, and soft drinks on top of the cargo of munitions as concealment.

23.    CENTCOM provided further information relating to similar past smuggling activity by the *Marwan 1*. This information revealed that in or around August 2022, the *Marwan 1* was involved in an alleged smuggling operation with participation of the Islamic Republic of Iran Navy. During that alleged smuggling operation, the *Marwan 1*, located off the coast of Iran at the time, was boarded by an Iranian Navy crew, which loaded munitions onto the vessel. Once the munitions had been loaded, the Iranian naval personnel then loaded a cargo of onions on top of the munitions. It was alleged that the *Marwan 1* subsequently delivered that cargo of munitions to an unspecified location in Yemen.

24.    The December 1, 2022, interdiction of the *Marwan 1* by the USS *Lewis B Puller* further led to the discovery of a crew member manifest. A review of this manifest revealed portions written in Farsi and a date provided in the Persian calendar format of "1401/9/1." A conversion of this date from the Persian calendar format to the traditional Gregorian calendar provided a date for the document as November 22, 2022. The manifest further revealed a port of departure for the

---

[1] The modern version of the Islamic Republic of Iran Navy ("IRIN") was developed in or around 1921 during the ruling period of Reza Shah. The Islamic Revolutionary Guard Corps Navy ("IRGCN") was developed in 1983 and was defined through its offensive and defensive capabilities through the Iraq-Iran conflict. Between 2007 and 2017, Iran redeveloped its naval capabilities. The IRGCN would have sole responsibility for the Persian Gulf and IRIN would have sole responsibility for the Gulf of Oman and Caspian Sea with control over the Strait of Hormuz, which includes the Port of Bandar Abbas, shared between IRIN and the IRGCN. Bandar Abbas is the known location for the headquarters of the IRGCN and is also known as an IRGC smuggling port. According to a 2017 United States Naval report, the IRGC is understood to be within the supervisory and reporting structure for both the IRGCN and IRIN.

crew as being "Bandar Abbas," a port located at the southernmost portion of Iran adjacent to the Strait of Hormuz. Bandar Abbas is known to be the location of the main base for the Iranian Navy and the headquarters for the IRGCN.

25.     Following the December 1, 2022, interdiction of the *Marwan 1* by the USS *Lewis B Puller*, an authority at CENTCOM, who has expertise in these matters and topics provided a public statement indicating "[t]his significant interdiction clearly shows that Iran's unlawful transfer of lethal aid and destabilizing behavior continues . . . U.S. naval forces remain focused on deterring and disrupting dangerous and irresponsible maritime activity in the region." A subsequent statement by CENTCOM indicated that there were sufficient indicators that the IRGC was responsible for coordinating the transportation of munitions during the *Marwan 1*'s December 1, 2022, attempted delivery. These specific indicators included the dhow's travel route, which is consistent with previous IRGC smuggling operations to Yemen as indicated in the Panel Reports, the transfer of the illicit materials to the dhow, and the manner in which the contraband was concealed with produce goods. Furthermore, it was determined that the ammunition and fuses recovered on board were of Iranian manufacture and origin.

### III.    DEFENDANT PROPERTY SEIZED FROM MARITIME VESSEL *MARWAN 1* IS LINKED TO IRAN

26.     U.S. law enforcement has identified the following items found on the *Marwan 1* as being subject to forfeiture:

a.      1.063 million rounds of 7.62x54mm ammunition, which are described as Defendant Property 1;

b.      24,000 rounds of 12.7mmx99mm ammunition, which are described as Defendant Property 2;

c.      6,960 proximity fuses (a.k.a. "fuzes") for rocket-propelled grenades, which are described as Defendant Property 3; and

d.      2,000 kg of propellant for rocket-propelled grenades, which are described as Defendant Property 4.

*See* Attachments 1-5 (photographs of Defendant Property).

### COUNT ONE—FORFEITURE
### (18 U.S.C. § 981(A)(1)(G)(i))

27.      The United States incorporates by reference the allegations set forth in Paragraphs 1 to 26 above as if fully set forth herein.

28.      As described above, the Defendant Properties were part of a weapons smuggling scheme involving the IRGC.

29.      The Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as domestic and foreign assets of a designated foreign terrorist organization, the IRGC, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5), against the United States, citizens, or residents of the United States.

30.      Alternatively, the Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as domestic and foreign assets affording any person (including without limitation the IRGC, the crew of the *Marwan 1*, and the intended Yemeni recipients of the Defendant Property) a source of influence over any such entity or organization, including the IRGC and the IRGC-QF.

\*      \*      \*

- 11 -

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the United States prays that notice issue on the Defendant Properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Properties be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: March 31, 2023
       Washington, D.C.

                      Respectfully submitted,

                      MATTHEW M. GRAVES
                      United States Attorney
                      D.C. Bar No. 481052

                      By:         */s/ Rajbir Datta*
                      RAJBIR DATTA
                        N.Y. Bar No. 5206073
                      BRIAN P. HUDAK
                      STUART D. ALLEN
                      ANNA D. WALKER
                      Assistant United States Attorneys
                      601 D Street, NW
                      Washington, DC 20530
                      (202) 252-7566 (main line)

                      *Attorneys for the United States of America*

## <u>VERIFICATION</u>

I, Alan Poorman, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 31st day of March 2023.


  */s/ Alan Poorman*
Special Agent Alan Poorman
Homeland Security Investigations



I, Kenneth Wheeler a Special Agent with the Defense Criminal Investigative Service, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 31st day of March 2023.


  */s/ Kenneth Wheeler*
Special Agent Kenneth Wheeler
Defense Criminal Investigative Service

**ATTACHMENT 1**

On December 1, 2022, U.S. authorities seized approximately 1.063 million rounds of 7.62x54mm ammunition, 24,000 rounds of 12.7x99mm ammunition, 6,960 proximity fuses for rocket-propelled grenades, and 2,000 kg (800 boxes/2,500 g) of propellant used to launch rocket-propelled grenades.



**ATTACHMENT 2**

On December 1, 2022, U.S. authorities seized approximately 1.063 million rounds of 7.62x54mm ammunition.



## <u>ATTACHMENT 3</u>

On December 1, 2022, U.S. authorities seized 24,000 rounds of 12.7x99mm ammunition.





## ATTACHMENT 4

On December 1, 2022, U.S. authorities seized 6,960 proximity fuses for rocket-propelled grenades.





## ATTACHMENT 5

On December 1, 2022, U.S. authorities seized 2,000 kg (800 boxes/2,500 g) of propellant used to launch rocket-propelled grenades.



